[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 2, 1998, the petitioner pleaded guilty to robbery in the first degree in violation of § 53a-134 (a)(3) of the Connecticut General Statutes and burglary in the first degree in violation of § 53a-101
(a)(1) of the Connecticut General Statutes. lie was sentenced to a total effective term of imprisonment of thirteen years, suspended after nine years, and four years probation, in accordance with a plea agreement. He was represented by Attorney Martin Zeldis.
The petitioner, through counsel, has filed an amended petition for a writ of habeas corpus based on a claim of ineffective assistance of counsel. This case was heard by this court in July 30, 2002. At the beginning of the trial counsel for the petitioner withdrew several of the claims of ineffective assistance of counsel. The claims that were presented at trial were that counsel was ineffective in not adequately advising the petitioner concerning his options relating to his plea of guilty, that he was not adequately advised regarding his options concerning potential defenses, that he failed to adequately challenge the photographic identification procedure and eyewitness identification, that he failed to adequately pursue his claim for exculpatory evidence, and that he failed to ensure that the petitioner's pleas were knowing, voluntary and intelligent.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. "First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the CT Page 14039 adversarial process that renders the result unreliable." (Internal quotation marks omitted). Guadalupe v. Commissioner of Correction, 68 Conn. 913, 796 A.2d 557 (2002).
 "The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard or reasonableness. . . . In Strickland, the United States Supreme court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) Henry v. Commissioner of Correction, 60 Conn. App. 313, 317-18, 759 A.2d 118 (2000).
When the ineffective assistance of counsel claim arises from the plea negotiation process, the prejudice requirement is satisfied if the petitioner proves that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) Daniel v. Commissioner of Correction, 57 Conn. App. 651, 665, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024
CT Page 14040 (2000).
Michael Braham v. Commissioner of Correction, 72 Conn. App. 1, 5-7
(App.Ct. 2002).
The only witnesses who testified were the petitioner and Mr. Zeldis. Offered as exhibits were the transcript of a hearing held on February 25, and 26, 1998 and March 2, 1998 on the petitioner's motion to suppress the photographic and in court identification, a transcript of the petitioner's plea and sentencing on March 2, 1998, and court records concerning the criminal charges.
The petitioner was not a credible witness. He has an extensive criminal record consisting of at least ten felonies. His testimony with respect to his claim that Mr. Zeldis did not meet with him or discuss possible pleas was shown to be false by his own admissions when show copies of the two habeas petitions be filed against Mr. Zeldis in 1996. His claims with respect to what Mr. Zeldis allegedly failed to do concerning the photographic identification procedure were rebutted by the transcript of that hearing. The court does not accept the petitioner's testimony.
Mr. Zeldis is an experienced criminal defense attorney. The court finds his testimony to be credible and factually accurate. He began to represent the petitioner in the Fall of 1995, shortly after his arrest, and continued to represent him until he was sentenced on March 2, 1998. When he started his representation of the petitioner he first interviewed him and found out his version of the facts. Mr. Zeldis filed the usual pretrial motions, including a motion for discovery of exculpatory evidence, reviewed the state's file, and had his investigator look into aspects of the case suggested by the petitioner, as well as matters that were apparent to Mr. Zeldis after he examined the state's file. His examination of the state's file also disclosed exculpatory information.
One of the areas that the petitioner, and Mr. Zeldis, were concerned with was the photographic identification procedure which led to his arrest. Mr. Zeldis filed an appropriate motion to suppress this procedure which was heard, during jury voir dire, over a three day period on February 25 and 26, 1998 and March 2, 1998. The transcript reflects a very competent and thorough effort by Mr. Zeldis at the hearing. The motion was denied.
There were plea negotiations before trial and an offer by the state of sixteen years suspended after eight years with a period of probation which would cover all pending changes. Mr. Zeldis recommended that the offer be accepted. He discussed with the petitioner the ramifications of CT Page 14041 going to trial in that he had a significant substantial criminal record back to 1969, and in addition to the criminal charges, was being charged as a persistent offender. The offer was rejected by the petitioner.
At the time the motion to suppress the identification was heard, the case was on trial and the jury had been selected except for one alternate. On March 2, 1998, the day the motion was denied, further plea negotiations took place, and an offer slightly higher than the original offer was made. Mr. Zeldis made no recommendation, and the petitioner decided to accept the offer. Mr. Zeldis then fully discussed the plea agreement with the petitioner, advised him of the rights he was giving up, the maximum and minimum exposures, and the charges that the state would not be pursuing. The petitioner fully understood what he was doing and understood the plea agreement. The petitioner had previously pleaded guilty to felonies on many occasions and therefore was familiar with the process.
The petitioner then entered his pleas of guilty under the Alford doctrine and was fully and properly canvassed by Judge Clifford. At the conclusion of the canvas, when asked by the court if he had any questions he wished to ask the court or Mr. Zeldis, the defendant volunteered the following. "No sir, I'd just like to first give my respects to the court, my attorney Mr. Zeldis, the prosecutor Mr. Gailor, and the deputy sheriffs staff." The presentence report was waived and the petitioner was then sentenced in accordance with the plea agreement. Mr. Zeldis testified that his relationship with the petitioner had been "stormy at the start, stormy in the middle, very good at the end." The statement of the petitioner at the sentencing appears to corroborate this testimony.
The court finds that Mr. Zeldis fully and adequately advised the petitioner with respect to his options concerning his plea of guilty and potential defenses. It is also found that Mr. Zeldis properly challenged the photographic and identification procedure, and diligently and adequately pursued all exculpatory evidence. Mr. Zeldis ensured that the petitioner was fully advised of his rights before entering his plea of guilty, and the record reflects that the plea was knowing, voluntary and intelligent.
The court finds that the petitioner has failed to prove any of his claims of ineffective assistance of counsel. He has failed to prove that Mr. Zeldis' representation of him was deficient in any of the ways alleged in the amended petition or in any other way. It is also found that he has failed to prove actual prejudice as a result of Mr. Zeldis' representation. CT Page 14042
The petition is dismissed.
___________________ William L. Hadden, Jr. Judge Trial Referee CT Page 14043